## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**CIMON LOVESS**

     Plaintiff,

v.                                 Civil Case No. <u>1:19-cv-03530     </u>

**WAKEFIELD & ASSOCIATES, INC.**
**Serve:** Stuart R. Blatt
1101 Saint Paul Street, Suite 302
Baltimore, MD 21202

     Defendant,

**CEP AMERICA, LLC**
**Serve:** Registered Agent Solutions, Inc.
8007 Baileys Lane
Pasadena, MD 21122

     Defendant,

**TRANS UNION, LLC**
**Serve:** CSC-Lawyers Incorp. Srvc. Co.
7 Saint Paul Street, Suite 820
Baltimore, MD 21202

     Defendant,

**EXPERIAN INFO. SOLS. INC.**
**Serve:** The Corporation Trust Inc.
2405 York Road, Suite 201
Lutherville Timonium, MD 21093

     Defendant.

---

## **COMPLAINT AND JURY DEMAND**

COMES NOW the Plaintiff, Cimon Lovess, (hereafter the "Plaintiff") and for her complaint against the Defendants Wakefield & Associates, Inc. ("W&A"), CEP America, LLC ("CEP"), Trans Union, LLC ("TransUnion") and Experian Info. Sols. Inc. ("Experian"), she alleges as follows:

## PRELIMINARY STATEMENT

1.      This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), 15 U.S.C. § 1692 et seq. (Fair Debt Collection Practices Act or "FDCPA"), Maryland Consumer Debt Collection Act, Md. Code Ann., Com Law § 14-201 *et seq*. ("MCDCA"), Maryland Consumer Protection Act, Md. Code Ann., Com Law § 13-101 *et seq*. ("MCPA") and common law tort of defamation.

## PARTIES TO THIS ACTION

2.      Plaintiff Cimon Lovess is an individual living in Baltimore City, Maryland and a "consumer" and/or "person" as defined by the FCRA, FDCPA, MCDCA and MCPA.

3.      Defendant W&A is an out-of-state debt collector that has been licensed as a collection agency in the state of Maryland since the year 2000.

4.      CEP provides acute care management and staffing solutions and serves more than 5.2 million patients annually at over 140 practice locations throughout the United States. CEP services and platforms include includes on-site clinical providers, as well as dedicated management and billing services.

5.      TransUnion is a credit reporting agency as defined in the FCRA.

6.      Experian is a credit reporting agency as defined in the FCRA.

## FACTULA ALLEGATIONS

**7.      On February 08, 2019, W&A sent Ms. Lovess a dunning letter wherein W&A claimed to be collecting a debt owned by CEP for services provided on May 21, 2015.**

8.      This claim was false because CEP did not own the debt.

**9.      W&A further claimed that $305.75 was owed on the debt with $250.00 and $55.75 being attributed to principal and interest, respectively.**

10.     This claim was also false because Ms. Lovess did not owe any debt to W&A or any entity that W&A *could be* collecting for.

11.     W&A's assessment of $55.75 in interest was illegal because Ms. Lovess had no agreement or contract allowing interest to be assessed with W&A or any creditor for whom W&A was collecting on behalf of.

**12.     W&A requested payment be remitted in full via an enclosed envelope and a detachable payment coupon that was made a part of the dunning letter.**

13.     Also included in the letter was Ms. Lovess' right to dispute the debt.

14.     However, the demand for payment in the second sentence and the payment coupon occupying a full third of the page was much more prominent than the paragraph conveying Ms. Lovess' rights under the FDCPA to dispute the debt.

15.     Consequently, the demand for payment contradicted and/or overshadowed the paragraph covering Ms. Proctor's right to dispute the debt.

**16.     W&A further stated that payment could be arranged by CREDIT CARD or BANK DRAFT and included on the back of the dunning letter a Notice of Service Fees that advised of a $5.95 payment processing fee.**

17.     W&A's attempt to collect a $5.95 processing fee was unauthorized or illegal because the processing fee was not authorized by any contract between Ms. Lovess and W&A, and Maryland law does not expressly allow such a fee to be charged and W&A did not indicate the processing fee would be collected by anyone but Defendant.

**18.     With regard to the "right to dispute the debt" paragraph, W&A stated in relevant part that "[i]f you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt…".**

19.     This misstates the consumer's right.

20.     The FDCPA, at 15 U.S.C. § 1692g(a) requires a debt collector to include in its initial communication to the debtor, among other things, a statement that the debtor may dispute and seek validation of the alleged debt from the debt collector. It goes on to state that a debt collector must provide:

> a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a)(4)-(5).

21.     W&A's statement improperly limits the time that a consumer may request verification of the debt by stating that the Plaintiff must notify Defendant within 30 days of the consumer's receipt of the dunning letter.

22.     In order to notify or give notice in writing to the debt collector by the 30th day, the consumer must send or mail the written notice days *before* or in advance of the 30-day deadline in order for the written notice to be *received* within 30-days.

23.     The FDCPA does *not* require a consumer to provide the written dispute to the debt collector within 30 days for the consumer's request to be valid and timely. Rather, the FDCPA requires that the consumer *send* or mail the written verification request by the 30th day of receiving the dunning letter.

24.     W&A's misstatement would cause a least sophisticated debtor to believe that he or she must send or mail the written dispute 3 to 7 days before the 30th day, so that delivery of the written request is made by the 30th day.

25.     In effect, W&A seeks to require the consumer to send or mail the written request within 23 to 27 days, instead of 30 days.

**26.     On February 25, 2019, Ms. Lovess called W&A about the debt.**

27.     W&A was unable to verify much, if anything, about the purported debt.

28.     Nonetheless, W&A requested payment of the debt from Ms. Lovess.

29.     Although the purported debt was older than three years old and outside of the statute of limitations, W&A did not advise Ms. Lovess that it could not judicially enforce payment.

**30.     During the phone call, W&A did not identify CEP as the creditor.**

31.     Instead, W&A identified St. Agnes as the *possible* _source_ of the debt.

32.     Ms. Lovess called St. Agnes and verified that she owed no outstanding debt.

33.     After inquiring about CEP, St. Agnes advised Ms. Lovess that CEP does not provide services to patients. But rather, CEP provides services to doctors and medical institutions.

**34.     In May 2019, Ms. Lovess discovered that W&A was reporting the debt to her Experian and Transunion (CRAs) credit reports.**

35.     W&A's reporting and communications to the CRAs were false because Ms. Lovess did not owe any debt to W&A.

36.     W&A knew it was reporting and communicating false information to the CRAs because Ms. Lovess contacted and advised W&A that she did not owe the balance and W&A was unable to verify the debt was legitimate when Ms. Lovess requested information on the debt.

**37.     In May 2019, Ms. Lovess sent dispute letters to Transunion.**

38.     Transunion sent Ms. Lovess its dispute results, which stated the W&A collection was removed from her report.

39.     Upon information and belief, Transunion removed the W&A collection from the credit report irrespective of W&A's input or instructions on the accuracy of the collection.

40.     Transunion removed the W&A irrespective of W&A's input or instructions because Transunion knew W&A was not a reliable source of information.

41.     Transunion should have never reported the W&A collection because Transunion knows W&A does not provide reliable information about consumers' debts.

42.     Transunion especially knows, or should know, that any consumer debt reported by Wakefield that identifies CEP as the creditor is false because CEP is not a creditor on any debt.

**43.     In May 2019, Ms. Lovess also sent dispute letter to Experian.**

44.     Experian did not send Ms. Lovess any notice of the results of her dispute.

45.     Upon information and belief, either Experian did not process Plaintiff's dispute or Experian did process her dispute and failed to notify her of the results of her dispute.

46.     After receiving no dispute results, Ms. Lovess sent another dispute letter to Experian.

47.     Thereafter, Ms. Lovess was notified that the W&A collection was no longer on her Experian report.

48.     Experian should have never reported the W&A collection because W&A is not a reliable source or furnisher of credit information on debtors.

## COUNT ONE: VIOLATIONS OF FDCPA

49.     Plaintiff incorporate paragraphs 1 - 48 by reference.

50.     Defendant W&A stated it was referred Plaintiff's account by its client, CEP.

51.     CEP is not a creditor and was acting as a debt collector when it referred Plaintiff's purported account to W&A for collection.

52.     W&A was acting within the scope of its agency with CEP when W&A attempted to collect the debt from Plaintiff.

53.     Defendants W&A and CEP violated 15 U.S.C. §1692g by contradicting and overshadowing  Plaintiff's right to dispute the debt with its overly prominent request for payment within the same communication and placing no reconciliation language to explain Plaintiff's obligation to pay now was subject to her right to request verification of the debt.

54.     Defendants W&A and CEP violated 15 U.S.C. §§ 1692g and 1692e by shortening the time or misrepresenting the time the Plaintiff had to dispute or request verification of the debt.

55.     Defendants W&A and CEP violated 15 U.S.C. §§ 1692e and 1692f by attempting to collect on a debt from Plaintiff that she did not owe.

56.     Defendants W&A and CEP violated 15 U.S.C. §§ 1692e and 1692f by misrepresenting that it could collect a processing fee that was not authorized by any contract or law.

57.     Defendants W&A and CEP violated 15 U.S.C. §§ 1692e and 1692f by illegally increasing the amount of the false and nonexistent debt by adding additional interest that was not authorized by any contract or law.

58.     Defendants W&A and CEP violated 15 U.S.C. §§ 1692e and 1692f by failing to notify Plaintiff that of the legal status and character of the debt – the debt could not be judicially enforced – in its communications and collection attempts on the debt.

59.     Defendants W&A and CEP violated 15 U.S.C. § 1692e by communicating credit information which was known or which should have been known to be false, to the CRAs.

60.     Defendants foregoing illegal debt collection activities have caused the Plaintiff to incur economic damages and emotional/mental distress damages, including without limitation, by example only and as described herein by Plaintiff: out-of-pocket expenses, damage to credit score,

injury to financial reputation, embarrassment, humiliation, frustration, anger, other emotional and mental distress, and headaches, sleeplessness, and other physical manifestations.

61.     Defendants' conduct was the proximate cause of Plaintiff's injuries, rendering Defendants liable for actual damages in an amount to be determined by the jury pursuant to 15 U.S.C. §1692k(a)(1), statutory damages pursuant to 15 U.S.C. §1692k(a)(2)(A), and reasonable attorney's fees pursuant to 15 U.S.C. §1692k(a)(3).

## COUNT TWO: FDCPA CLASS CLAIM

62.     Plaintiffs incorporate paragraphs 1 - 48 by reference.

63.     15 U.S.C. § 1692g(a) provides that

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (2)     the name of the creditor to whom the debt is owed …

### Class Allegations

64.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks to bring and maintain this action for herself and on behalf of a class consisting of the following:

> All individuals who, within one year of the filing of this complaint, have received correspondence from W&A that identified CEP as the creditor of a debt that W&A was attempting to collect.

65.     *Ascertainability/Numerosity*: The class is ascertainable in that it is comprised of individuals who can be identified by reference to purely objective criteria. There are hundreds, if not thousands of members of the class and, therefore, it would be impracticable to bring all, or even a substantial percentage of, such persons before the Court as individual plaintiffs.

66.     *Typicality*: The claims of the named plaintiff are typical of the claims of each member of the class he seeks to represent because: (1) they have all been injured in the same manner as a result of Defendants misrepresentation(s) and/or omission(s); and (2) their claims are all based on the same legal theory.

67.     *Adequacy Of Representation*: Plaintiff is an adequate representative of the class she seeks to represent because: (a) she is willing and able to represent the proposed class and has every incentive to pursue this action to a successful conclusion; (b) her interest is not in any way antagonistic to those of the other class members; and (c) she is represented by experienced and competent counsel.

68.     *Commonality*:  There are questions of law and fact common to all members of the Class. The overarching questions of law and fact that are common to all members of the class are:

(a)     Defendant W&A attempted to collect a debt;

(b)     Defendant W&A's initial collection attempt was a dunning letter;

(c)     Defendant W&A identified CEP as the creditor in its dunning letter;

(d)     CEP retained W&A to collect the debt;

(e)     CEP was not the creditor for the debt;

(f)     CEP is a debt collector; and

(g)     Defendants' failure to identify the creditor was a violation of Defendants' obligations under FDCPA, 15 U.S.C. § 1692g(a)(2); and

(h)     Defendants' failure to identify the creditor was a material violation of FDCPA, 15 U.S.C. § 1692.

69.      Class certification of Plaintiff's claims is appropriate because Defendants have acted and/or refused to act on grounds generally applicable to the class, thereby making declaratory and

final injunctive relief appropriate. Such generally applicable grounds consist of Defendants misrepresentation of and/or failure to disclose the creditor of the debt.

70.     The class action vehicle is superior to other available methods for the fair and efficient adjudication of these claims. For the vast majority of members of the class, the members of the class are likely to be unaware of their rights and if they were aware, the amount of any potential recovery is too small to justify the cost of prosecuting their claims individually, despite the availability of costs and attorney fees in the event they were to prevail on the merits. Further, requiring each class member to pursue his or her claim individually would entail needless duplication of effort, would waste the resources of both the parties and the Court, and would risk inconsistent adjudications. Congress intended class actions to be the principal enforcement mechanism under the FDCPA, 15 U.S.C. § 1692.

71.     Defendants initial communication with the Named Plaintiff and Class members identified CEP as the creditor, but CEP was not the creditor of the debt.

72.     Defendants' failure to identify the creditor violated the Named Plaintiff and Class members' rights under 15 U.S.C. § 1692g(a)(2).

73.     Defendants' misrepresentation of the creditor in their attempts to collect the debt violated the Named Plaintiff and Class members' rights under 15 U.S.C. § 1692e(10).

74.     As a result of Defendants' noncompliance with the requirements of 15 U.S.C. §§ 1692e(10) and 1692g(a)(2), the Named Plaintiff and Class members are entitled to statutory damages pursuant to §1692k(a)(2)(A) and reasonable attorney's fees pursuant to §1692k(a)(3).

## COUNT THREE: VIOLATIONS OF MCDCA

75.     Plaintiff incorporates the preceding allegations by reference.

76.     Defendants knew Plaintiff did not owe a debt to W&A or CEP.

77.     Defendants knew they did not have a right to charge interest on the debt.

10

78.     Defendants knew they did not have a right to collect a processing fee.

79.     Defendants written and oral statements violated MCDCA, Md. Code Ann., Com Law § 14-202(8) by claiming a right to and/or attempting to collect a debt that Defendants knew Plaintiff did not owe.

80.     Defendants further violated MCDCA, Md. Code Ann., Com Law §14-202(8) by claiming a right and/or attempting to collect interest and processing fee that Defendants knew were not authorized by contract or law.

81.     Defendants violated MCDCA, Md. Code Ann., Com Law § 14-202(11) by:

    a.     contradicting and overshadowing Plaintiff's right to dispute the debt with its overly prominent request for payment within the same communication and placing no reconciliation language to explain Plaintiff's obligation to pay now was subject to her right to request verification of the debt;

    b.     shortening the time or misrepresenting the time the Plaintiff had to dispute or request verification of the debt;

    c.     attempting to collect on a debt that Plaintiff did not owe;

    d.     misrepresenting that it could collect a processing fee that was not authorized by any contract or law;

    e.     illegally increasing the amount of the false and nonexistent debt by adding additional interest that was not authorized by any contract or law;

    f.     failing to notify Plaintiff that of the legal status and character of the debt – the debt could not be judicially enforced – in its communications and collection attempts on the debt; and

    g.     communicating credit information which was known or which should have been known to be false, to the CRAs.

82.    As a result of the foregoing MCDCA violations, Plaintiff suffered actual damages consisting of both pecuniary expenses, credit damage, injury to financial reputation, humiliation and other mental or emotional distress.

83.    Defendants' foregoing violations render Defendants liable for actual damages in an amount to be determined by the Court pursuant to MCDCA, Md. Code Ann., Com. Law § 14-203.

### COUNT FOUR: MCDCA CLASS CLAIM

84.    Plaintiffs incorporate paragraphs 62 - 74 by reference.

85.    Md. Code Ann., Com Law § 14-202(11) prohibits a debt collector from engaging in any conduct that violates, among other sections, Section 1692g of the federal Fair Debt Collection Practices Act.

86.    In turn, 15 U.S.C. § 1692g(a) provides that

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(2)    the name of the creditor to whom the debt is owed …

### Class Allegations

87.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks to bring and maintain this action for herself and on behalf of a class consisting of the following:

All individuals who, within three years of the filing of this complaint, have received correspondence from W&A that identified CEP as the creditor of a debt that W&A was attempting to collect.

88.    *Ascertainability/Numerosity*: The class is ascertainable in that it is comprised of individuals who can be identified by reference to purely objective criteria. There are hundreds, if not

thousands of members of the class and, therefore, it would be impracticable to bring all, or even a substantial percentage of, such persons before the Court as individual plaintiffs.

89.     *Typicality*: The claims of the named plaintiff are typical of the claims of each member of the class he seeks to represent because: (1) they have all been injured in the same manner as a result of Defendants misrepresentation(s) and/or omission(s); and (2) their claims are all based on the same legal theory.

90.     *Adequacy Of Representation*: Plaintiff is an adequate representative of the class she seeks to represent because: (a) she is willing and able to represent the proposed class and has every incentive to pursue this action to a successful conclusion; (b) her interest is not in any way antagonistic to those of the other class members; and (c) she is represented by experienced and competent counsel.

91.     *Commonality*:  There are questions of law and fact common to all members of the Class. The overarching questions of law and fact that are common to all members of the class are:

(a)     Defendant W&A attempted to collect a debt;

(b)     Defendant W&A's initial collection attempt was a dunning letter;

(c)     Defendant W&A identified CEP as the creditor in its dunning letter;

(d)     CEP retained W&A to collect the debt;

(e)     CEP was not the creditor of the debt;

(f)     CEP is a debt collector; and

(g)     Defendants' failure to identify the creditor was a violation of Defendants' obligations under FDCPA, 15 U.S.C. § 1692g(a)(2); and

(h)     Defendants' failure to identify the creditor was a material violation of FDCPA, 15 U.S.C. § 1692.

92.     Class certification of Plaintiff's claims is appropriate because Defendants have acted and/or refused to act on grounds generally applicable to the class, thereby making declaratory and final injunctive relief appropriate. Such generally applicable grounds consist of Defendants misrepresentation of and/or failure to disclose the creditor of the debt.

93.     The class action vehicle is superior to other available methods for the fair and efficient adjudication of these claims. For the vast majority of members of the class, the members of the class are likely to be unaware of their rights and if they were aware, the amount of any potential recovery is too small to justify the cost of prosecuting their claims individually, despite the availability of costs and attorney fees in the event they were to prevail on the merits. Further, requiring each class member to pursue his or her claim individually would entail needless duplication of effort, would waste the resources of both the parties and the Court, and would risk inconsistent adjudications.

94.     Defendants initial communication with the Named Plaintiff and Class members identified CEP as the creditor, but CEP was not the creditor of the debt.

95.     Defendants' failure to identify the creditor violated the Named Plaintiff and Class members' rights under Com Law § 14-202(11)

96.     Defendants' misrepresentation of the creditor in their attempts to collect the debt violated the Named Plaintiff and Class members' rights under Com Law § 14-202(11).

97.     Named Plaintiff and Class members suffered damages as a result of Defendant's misrepresentations and omissions.

98.     As a result of Defendants' noncompliance with the requirements of Com Law § 14-202(11), the Named Plaintiff and Class members are entitled to actual damages pursuant to MCDCA, Com. Law § 14-203 and reasonable attorney's fees pursuant to MCPA, Com. Law §13-408(b).

## COUNT FIVE: VIOLATIONS OF MCPA

99.     Plaintiff incorporates paragraphs 1 – 48 by reference.

100.    CEP provides urgent care and anesthesiology services to consumers or patients and is a "merchant" within the meaning of the MCPA, Com Law § 13-101(g) and therefore, CEP is subject to all of the MCPA's provisions prohibiting unfair and deceptive trade practices including those in §§ 13-303 and 13-401.

101.    Defendant CEP violated the Md. Code Ann., Com Law §13-301(13)(iii) when the Defendant violated the MCDCA at §§ 14-202(8),(11).

102.    As a result of the foregoing MCPA violations, Plaintiff suffered actual damages consisting of both pecuniary expenses, credit damage, injury to financial reputation, humiliation and other mental or emotional distress.

103.    Defendants' conduct was the proximate cause of Plaintiff's injuries, rendering Defendants liable for actual damages in amount to be determined pursuant to the MCPA at §13-408(a), and for attorney's fees pursuant to MCPA, §13-408(b).

## COUNT SIX: VIOLATION OF 15 U.S.C. § 1681e(b)

104.    Plaintiff incorporates paragraphs 1 – 48 by reference.

105.    Section 1681e(b) mandates that Experian and Trans Union report consumer information with ***the maximum possible accuracy.*** In other words, the Defendants' reporting must be more than just accurate, it must be done to perfection and without any inaccuracies.

106.    Defendants published information concerning a W&A collection that was patently inaccurate and should have never been included in Plaintiff's credit reports.

107.    Defendants published information furnished from W&A, an unreliable source— W&A has 311 complaints with BBB, 937 complaints with CFPB and 141 federal lawsuits— of information, without taking reasonable measures to assure the reported information was accurate.

108.    Defendants published information concerning the W&A without considering information from sources other than the furnisher. Exclusive reliance on one source of information does not assure the reporting of maximum accurate information because the Defendants do not consider information from other sources that may alert the Defendants to the fact that the information being reported is not accurate.

109.    Based on the foregoing, the Defendants violated 15 U.S.C. § 1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files they published and maintained for Plaintiff.

110.    As a result of Defendants' violations of 15 U.S.C. § 1681e(b) Plaintiff suffered actual damages, including but not limited to: pecuniary expenses, loss of credit opportunity, damages to reputation, frustration, embarrassment, humiliation and other mental and emotional distress.

111.    The violations by Defendants were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

112.    Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendants Experian and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT SEVEN: VIOLATION OF 15 U.S.C. § 1681i(a)

113.    Plaintiff incorporates paragraphs 104 – 112 by reference.

114.    Section 1681i(a)(1) mandates that a credit reporting agency investigate a consumer's dispute and report the results of the reinvestigation.

115.    Section 1681i(a)(2)(A) mandates that a credit reporting agency provide notice of the consumer's dispute to the furnisher of the disputed information.

16

116.     Section 1681i(a)(4)(A) relates to section 1681i(a)(1) and mandates that the credit reporting agency review and consider all the relevant information provided by the consumer during the credit reporting agency's investigation.

117.     Section 1681i(a)(5)(A) mandates that a credit reporting agency delete or modify the disputed information that has been found to be inaccurate or incomplete or unverifiable *after* conducting a reasonable investigation.

118.     Section 1681i(a)(6)(A) mandates that a credit reporting agency provide written notice to a consumer of the results of its reinvestigation within five days of completing the reinvestigation.

119.     The Defendants have virtually no policies, practices or procedures to investigate a consumer's dispute, much less conduct a *reasonable* investigation that includes reviewing and considering all the relevant information provided by the consumer and information already within Defendants' possession as a part of the Defendants' investigation.

120.     Defendants Trans Union and Experian violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable investigate of Plaintiff's disputes.

121.     Defendant Experian violated 15 U.S.C. §1681i(a)(6)(A) by failing to notify Plaintiff with the results of its reinvestigation.

122.     As a result of Defendants' violations of 15 U.S.C. §§ 1681i(a)(1)-(5), Plaintiff suffered actual damages, including but not limited to: out-of-pocket and/or pecuniary costs, loss of credit opportunity, damage to reputation, frustration, embarrassment, humiliation and other mental and emotional distress.

123.     The violations by Defendants were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

124.    Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendants Experian and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**COUNT EIGHT: VIOLATION OF U.S.C. § 1681s-2(b)**

125.    Plaintiff incorporates paragraphs 1 – 48 by reference.

126.    Defendant W&A received notice of Plaintiff's dispute but did not conduct a thorough, detailed and careful inquiry of the claims raised in Plaintiff's dispute. Instead of conducting a reasonable investigation, W&A simply confirmed that the identification information of Plaintiff in its system was accurate, and made absolutely *no* inquiry into the accurateness of the information concerning the reported debt.

127.    Defendant W&A violated 15 U.S.C. §§ 1681s-2(b)(1) by failing to fully and properly investigate Plaintiff's disputes and failing to review all relevant information provided by the CRAs.

128.    W&A's procedure to simply data match information that it previously reported, or data match the information that it has on its computer desktop with the information currently be reported to the CRA, instead of conducting a careful inquiry into the substance and merits of a consumers' dispute, is unreasonable and a willful violation of the FCRA.

129.    As a result of W&A's violations of 15 U.S.C. § 1681s-2(b)(1), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to credit profile and reputation, embarrassment, humiliation and other mental and emotional distress.

130.    The ongoing infractions were either intentional, or Defendant W&A cared so little about the duties owed under the FCRA that its conduct was carried out with reckless disregard, which gives rise to a willful violation, rendering Defendant liable pursuant to 15 U.S.C. §1681n.

131.    The violations by Defendant were willful, rendering them liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Defendant was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

132.    Plaintiff is entitled to recover actual damages, costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o

### COUNT NINE: DEFAMATION

133.    The allegations set forth in paragraphs 125 – 132 above are re-alleged and incorporated by reference as if fully set forth herein.

134.    Plaintiff apprised W&A that its records were inaccurate, and that Plaintiff did not have a debt obligation to W&A or CEP or any other entity.

135.    Despite knowing the Plaintiff did not owe a debt or any money to W&A, in an effort to shame the Plaintiff and coerce payment from the Plaintiff and in malice or reckless indifference to Plaintiff's rights, W&A published the false representation that Plaintiff owed a delinquent debt obligation to W&A. This representation constituted a defamatory statement in that it tended to injure the Plaintiff's credit profile, profession and employment, and further, in impugning her to be financially irresponsible.

136.    In its publications or reporting to the CRAs, Defendant W&A knowingly made the aforementioned false and defamatory statements about Plaintiff.

137.    Defendant W&A published this false and defamatory publication to the CRAs, who reasonably understood this publication to be defamatory.

138.    Defendant W&A knew the CRAs would publish the false and defamatory publication to other creditors and employers of the Plaintiff.

139.    Defendant W&A acted with knowledge of the falsity of the statements and with the intent to harm (or reckless disregard for) the Plaintiff chances obtaining credit when instructing the CRAs to report the erroneous and derogatory credit information about the Plaintiff.

140.    As a result of the false and defamatory statements published by Defendant W&A, the character and financial reputation of Plaintiff was harmed, her standing and reputation in the financial and credit community were impaired, and she suffered mental anguish.

141.    As a direct and proximate result of the false and defamatory credit reporting published by Defendant W&A, Plaintiff's credit score and credit profiles were injured, thereby suffering a loss of prospective credit and/or employment.

**WHEREFORE**, Plaintiff respectfully prays:

A.    That the actions and/or communications of Defendants complained of herein be determined and adjudged to be in violation of the rights of Named Plaintiff and Class members under the FDCPA and MCDCA;

B.    That the Court enter an Order certifying all of the claims of the Classes;

C.    That in accordance with 15 U.S.C. § 1692k(a)(2), judgment be entered in favor of Named Plaintiff and the FDCPA Class, either individually or class-wide, and against Defendants for statutory damages in amounts to be determined at trial;

D.    That in accordance with 15 U.S.C. § 1692k(a)(3), Named Plaintiff and the FDCPA Class be awarded the costs of this action together with reasonable attorney's fees as the Court may determine;

E.    That the Court enter an order approving an incentive award for the Named Plaintiff;

F.    That the Court award actual damages for Counts I, III, V, VI, VII, VIII & IV;

G.    That the Court award statutory and punitive damages for Counts I, VI, VII & VIII;

H.    That the Court award costs and any reasonable attorneys' fees; and

I.      That the Court award any such other and further legal and equitable relief as may be

found appropriate and as the Court may deem equitable and just.

## DEMAND FOR TRIAL BY JURY

142.    Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: December 2, 2019


Respectfully Submitted,

CIMON LOVESS

/s/ *Jeffrey W. Styles*_____
Jeffrey W. Styles, Esq., No. 20659
Washington Legal Group, LLC
1666 K Street, NW, Suite 440
Washington, DC 20006
Tel: (202) 503 - 1708
Email: jstyles@washlegal.com

*Counsel for Plaintiff*